The first case on the call of the docket is agenda number two, number 127789, People of the State of Illinois v. Ernesto Urzua. Counsel, are you prepared to proceed? And please identify yourself. Thank you, Your Honor. And may it please the Court, I'm Assistant Attorney General Eric Levin on behalf of the people of the State of Illinois. The Appellate Court reversed the second-stage dismissal of defendants' post-conviction petition based solely on a That was wrong for two independent reasons. The first is that defendant had no further right to counsel, let alone to the statutory reasonable assistance standard after his initial appointed post-conviction attorney moved to withdraw or was granted leave to withdraw, excuse me, under People v. Greer. In Greer, this Court recognized that when a post-conviction attorney conscientiously determines that his client's claims are either frivolous or patently without merit, he may move to withdraw on that basis. Counsel? Yes. Isn't the crux of the dispute here whether or not that dismissal was actually based on Greer? Yes, Your Honor, that is one of the disputes here, and I think you're right, that is the crux of the dispute here. And I think for a number of reasons, which I'd like to get into, I think the record is fairly clear that the circuit court here did grant counsel leave to withdraw based on Greer. Appointed counsel here filed a motion. Counsel, did the court make a finding, a specific finding, that the petition had no merit? The circuit court did not articulate that finding, no. But the answer is no. Well, no, but this Court's held in analogous circumstances that when a circuit court summarily dismisses a petition at the first stage, it doesn't have to articulate the reasons why. But in Greer, there was a specific finding, correct? I believe there was in Greer. But here we know that the Greer motion itself rested on a single basis, which was counsel's determination that the claims were frivolous or patently without merit. And the circuit court then Did counsel refer to the motion as a Greer motion? Yes. Counsel cited both Greer and People v. Cuner, which is sort of another Greer type of case. And counsel explained that in his determination, the claims were frivolous or patently without merit, and he moved to withdraw on that basis. And that was the sole basis for counsel's motion to withdraw. The circuit court then granted that motion, and on two separate occasions stated that it had done so, quote, pursuant to Greer, and, quote, based upon Greer. But isn't one of the problems, counsel, that the trial judge asked the defendant if he had a response, and he said, I'm going to hire an attorney. So isn't it that the motion itself just wasn't complete? It wasn't finalized because there had been no response by the defendant? He didn't... Well, you're right, Your Honor. Defendant was given an opportunity to The circuit court at that point didn't, you know, deny the motion to withdraw as moot. Appointed counsel didn't withdraw the motion. But instead, the circuit court granted the motion to withdraw and stated that it was doing so based upon Greer and pursuant to Greer. So I think in that respect, it's fairly clear that this was the circuit court's granting of the motion under Greer. And the circuit court, in fact, recognized and stated that it was a Greer motion. That it would have been inappropriate for it to appoint defendant new counsel. And that statement would have only made sense if the circuit court had actually granted the motion under Greer rather than allowed counsel to withdraw for some other reason unrelated to the merits of the defendant's claims. The appellate court and defendant sort of suggest here that the circuit court, you know, sort of accidentally or unknowingly granted this motion based upon Greer or pursuant to Greer. But that... Well, Your Honor, I absolutely understand that there are arguments on the other side about why this wasn't a motion to withdraw that was granted based upon Greer. But I think that there's a number of flaws with those arguments. The first of which is that the idea that the circuit court here didn't know what it was doing or accidentally granted this motion pursuant to Greer goes against the general presumption that we normally apply, which is that a circuit court knows and follows the law. And here it also goes against other statements that the circuit court made. As I noted, the circuit court here recognized that one of the effects of its ruling was that it could not appoint new counsel for the defendant. The court also recognized that under prevailing appellate court precedence, further proceedings were necessary after granting the Greer motion. And so that's what the court's referring to when it says the granting of the Greer motion's not dispositive, and I didn't jump as far as I think the State thinks I jumped. That's the court recognizing that under the appellate court precedent that is currently prevailing, once the court granted the Greer motion, it couldn't simultaneously dismiss the petition. Rather, it had to wait for the State to file a motion to dismiss, and it then had to allow the defendant to respond to that motion. And so here the court was essentially saying, I can't appoint you a new lawyer now that I've granted the Greer motion, but it wouldn't be fair to prevent you from hiring a lawyer if you can afford to do so. But that didn't – But what is the – moving on, we were talking about what happened and was this a decision on the merits or not. But moving on to that, is there any – we're concerned about appointment of counsel. Why doesn't the fact that this was retained counsel take this issue outside of the statute itself? This is not appointed counsel. Correct, Your Honor. And this Court has held in other cases that defendants who retain post-conviction counsel do still have a right to reasonable assistance from those attorneys. But I think there's a critical distinction between those cases and this case, and that's the fact that in those cases, Cato and Johnson in particular, the retained lawyer was the defendant's only post-conviction lawyer. And the court there was concerned with having some mechanism to review the attorney's performance. Here, there was a mechanism for doing that, and it was to review the performance of appointed counsel. Defendant here could have challenged appointed counsel's performance in the circuit court in response to the motion to withdraw. He could have done so on appeal, either in arguing that counsel performed unreasonably or that the circuit court erred in granting the motion to withdraw. But he didn't do that. Instead, he's trying to challenge retained counsel's performance. And to hold here that the defendant still possessed a right to reasonable assistance from that attorney would contradict Greer's understanding that once a motion to withdraw on that basis is granted, the defendant has no continuing – has no right to continuing representation in the proceedings. What you're saying is when he said, I want a lawyer, after this motion that was filed and the court was entertained, you're saying that the role of that lawyer was to respond to the Greer motion, the motion to withdraw, and to argue on behalf of the Petitioner whether or not it was meritorious. Is that what you're saying? Well, I think at that point it was incumbent on the defendant to argue why he thought counsel's Greer motion was not well taken, and to argue that, no, counsel should not be allowed to withdraw because, in fact, my claims do have merits. And at that point, and that's how it normally works in these cases in my experience, is that there will then be a hearing on that motion to withdraw. And here the Court gave the defendant an opportunity to do that. I mean, there was about a six-month period between the time counsel filed the motion to withdraw and the time of this hearing. And at no point during that six months did the defendant file a written response to the motion to withdraw. And at no point in court at the hearing did he take any – did he exercise the opportunity that he was given to respond to the merits of the Greer motion. Counsel, explain to me why we're going to revisit an issue, the issue as to whether or not counsel can withdraw, when the issue of whether or not the petition has merit is still an issue before the Court. Why doesn't he just address that issue, retain counsel? The Court still has to resolve it, correct? Well, the Court here did resolve the merits of the petition when it ultimately dismissed it at the second stage. But what it ultimately – what it did, though, at the stage we're talking about, it simply told counsel he could withdraw, correct? Correct. But the Court did clarify that he – that it was allowing counsel to withdraw based upon Greer. And Greer holds that counsel can be allowed to withdraw when the circuit court determines that, you know – But he also said he had not reached the merits. Is that correct? No. That's not correct, Your Honor. And I think that's a mistake in the appellate court's opinion. The appellate court doesn't really identify what it was referring to there. I think it was referring to the Court's comments that the Greer motion was not dispositive or perhaps that it had not jumped as far as the State thought it did. So what does that mean? Oh, well, I think in context that's best understood as a reference to the appellate precedent holding that the granting of the Greer motion itself is not dispositive, meaning the granting of the Greer motion does not allow the circuit court to simultaneously dismiss the petition. But you do agree that in Greer there was a specific finding, the petition had no merit, that did not occur in this case? I absolutely agree, Your Honor. I recognize, I acknowledge that the circuit court here did not expressly articulate its finding that the petition had no merit. So the issue of the petition is still before the court, correct? Well, at that point, the issue of the petition was still before the court because the appellate precedent that's currently prevailing says that when granting a Greer motion, the court can't simultaneously dismiss the petition. Instead, it has to wait for the State to file a motion to dismiss. And so here, when the court granted the Greer motion and allowed counsel to withdraw, it couldn't have dismissed the petition at that stage. Now, we've argued in – May I ask this, too? Yes. Where we're today, there was a second Greer motion that was filed, correct? Correct. The retained counsel, after – let's remember what we're talking about. Yes. The appointed counsel took six years to file the Greer motion. Correct. The retained counsel was four years, and that counsel also filed 651C petition and said it could not amend the petition, correct, all of that time? Correct. And then, ultimately, the trial court did rule on the merits. Correct. I mean, what is before us is a final order dismissing this petition as having no merit. Then it goes to the appellate court, and the issue is the reasonable assistance of the retained counsel. There's no allegation against the appointed counsel. And then this is – so right – what we have in front of us is the dismissal of this petition on the merits. Correct. Then the appellate court goes ahead and sends it back for a third lawyer, an appointed lawyer. How do we get to that? How does this defendant have a second lawyer appointed and paid for by the people of the State of Illinois? Well, Your Honor, we don't think he has that right, and we think the appellate court here got it wrong in sending it back for precisely that reason. And that sort of leads into my second argument. You know, as I mentioned at the outset, there are two independent reasons that the Court erred here. The first, of course, is that the defendant had no right to reasonable assistance from that second lawyer. But even if he did, even if the Court disagrees with us on that, the appellate court here erred in automatically reversing for yet a third attorney to come on board without making any finding that the defendant was prejudiced by his retained counsel's performance. And this is an issue that's also before the Court. It was argued in November in People v. Addison. And for the same reasons we've argued there and that we argued here in our briefs, the People v. Suarez rule that the appellate court relied on, it should be limited to its facts, which is that automatic reversal is mandated when a post-conviction counsel wholly fails to comply with his Rule 651C duties. Let me just talk a little bit about the facts in this case in that context. Yes. Here, appointed counsel. So what we're talking about is a document that was filed attached to the petition signed by a man named Marcus Stiles, I think, who aversed that. He spoke with a man named Garcia, and Mr. Garcia said he, in fact, committed the crime and not the defendant here. Basically, that's where we are. For six years, that and that document was not notarized. Correct. Throughout the first six years, appointed counsel comes back each time and says to the Court, we need more time to investigate. We need more time to investigate. And then, when he files, his rear motion says, there are real serious questions raised by whether or not this person even exists. Correct. That's the basis of the rear motion. Yes. Then, new counsel comes in. He takes four years. He, too, is pursuing the petition as it was framed, including this document, and ultimately, after four years, says, I found someone by the same name who was in the county jail four years ago. But he, retained counsel, does not present a signed affidavit from this person. Correct. This person is, you know, never appeared anywhere. This case has been pending for 12 years. No one has ever found that person or brought him to court. The appellate court here reverses the final judgment on the merits by the trial court and sends it back for a third lawyer to try to, well, no, that's not what they said, a third lawyer to get a signature of this gentleman that no one has been able to find for 12 years. Is that the status of where we are and what we are reviewing? Correct, Your Honor. And I think part of that goes to whether counsel was even unreasonable. And I'll concede that we've not argued that. We didn't argue it in the appellate court, and we haven't argued it here. So you're admitting the issue is forfeited? Well, the unreasonable assistance prong. But the separate issue of whether the defendant here was prejudiced by counsel's performance, I think this also goes to that issue. I mean, here we have, there are serious questions about whether, in fact, there is a Marcus Spires who made this unnotarized statement here. But even beyond that, even taking the statements or even taking the contents of that statement as true, it wouldn't establish an actual innocence claim. I mean, this ---- Just to be clear, too. Just so I can finish my recitation of the facts here. The statement says Mr. Garcia said he did it. Mr. Garcia is deceased. Correct. And the victim in this case testified that the shooter was a light-skinned Hispanic male. At trial, there was testimony from Morales. Morales and Garcia were the two men who identified defendant at trial as the shooter. And we do have testimony in the record that Garcia is darker-skinned. It's a little unclear. The testimony was that Morales testified that Garcia was darker-skinned than he was. But we do know here that, relatively speaking, Garcia is a darker-skinned individual, which contradicts the trial testimony that the shooter was a lighter-skinned man. So even taking the statement as true, even putting aside all the questions of authenticity here, the statement would just not establish an actual innocence claim. And to send it back now to send a third lawyer on a wild goose chase to find this Marcus Spires and get his signature and an affidavit on this statement, there's no reasonable probability that even if counsel had done that, that the defendant would have been entitled to an evidentiary hearing on that claim. And so we think for that reason, the court should apply the same type of prejudice standard that it applies when even the constitutional right to counsel is at issue, which is that, generally speaking, a person seeking relief from ineffective assistance or unreasonable assistance has to establish not only deficient performance by their lawyer, but also a reasonable probability that that deficient performance affected the outcome of the proceeding. And so if there are no further questions, we would ask the court to reverse the appellate court's judgment. Thank you, Your Honor. Good morning, Your Honors. Counsel, and may it please the court, my name is David Holland. I represent Ernesto Urzua. The state raised two issues in this case, and both of them are procedurally convoluted by the state's design, and both of them are meritless. The first issue, the state presented this sweeping legal issue in a petition for leave to appeal. But I think this court can see that after this case has been briefed, really it's a factual dispute about what was the intention of the circuit court's ruling, and that factual dispute does not resolve in the state's favor. As the second district explains, the record compels the conclusion that the court granted counsel leave to withdraw not on the grounds that she had found that the petition was frivolous at that point, but simply because Urzua was intending on hiring a lawyer. And we know that's true because the judge who issued that ruling said it repeatedly, that she was allowing counsel to withdraw on the grounds that Urzua wanted to substitute counsel. It's remarkably telling that at the actual court date that the state is claiming that the case should have ended, that the right to counsel terminated, nobody in the courtroom at that moment thought that the judge was making a dispositive ruling. The state did not object. On the next court date, for the first time, a state's attorney comes in, admits that she was not in the room at the time of the ruling, says that she looks at the clerk's computer, saw this notation, and now is arguing the case should be over, there shouldn't be any more lawyering, and that's when the judge says, I did not jump as far as you're saying, and critically, there was not even a state motion to dismiss on file at the time that Urzua said that he would like to hire a lawyer. So as the judge put it, why would I deny that? So the state's argument to this court hangs entirely on form over substance. The state can only hang its argument on the fact that the judge said pursuant to Greer, but the judge mistakenly using that shorthand term doesn't defeat the substance of a ruling. That is, the judge was correct, substantively both as to Greer and a choice of counsel. Under Greer, there has to be a state motion to dismiss on file for the case to be disposed of, and under choice of counsel, unless this request is in bad faith or it's dilatory, then the judge has discretion under the Post-Conviction Hearing Act to grant that request. And so this judge properly exercised her discretion to allow Urzua to have a lawyer. The judge even said to the state, you can object if an attorney files something. And then the retained counsel files his appearance and the state does not object. And then again, at the end of the case, and the state is trying to make the same argument that the case should have ended two years ago, the judge says, this was not a dispositive ruling. And in fact, to deny Urzua counsel at this point, where there had not even been a state motion to dismiss on file, would be manifestly unfair. The state makes a lot of hay of the idea that the judge said, I'm going to allow you to hire a lawyer, but I wouldn't allow an appointed counsel to come in. And the state is saying, well, that means she must have ruled on the merits. That's the only interpretation. But that's simply not true. The judge is explaining a really basic principle of choice of counsel law, that if a defendant says, I want to hire a lawyer, but what they can't do is they can't fire their public defender and get a new public defender. It's a really straightforward statement of law when this judge is explaining her substitution of counsel choice. There's also some absurdities in the inevitable conclusion in the state's argument. The state is saying that the attorney that represented my client for two years at the end of the case, who filed the 651C certificate, who argued the motion, who was the attorney on the final judgment, the state is saying that that attorney had no duty to represent Mr. Azura reasonably. This court has never held anything even close to that. As my opposing counsel has recognized, in 2018, this court held where there's no statutory right to counsel at all. A retained private lawyer. That attorney must perform at least reasonably. Just last term, this court in Smith held that a successor, second stage counsel, although they don't have to file their own 651C certificate, they must perform at least reasonably. This court has never held that a lawyer representing a post-conviction petitioner is not held to the standard of reasonableness. Do you have any argument as to the reasonableness of the representation of the first PC counsel? No, because Mr. Azura is abiding by the judge's ruling that that was not a dispositive motion. And I think there's just a... But you're not criticizing. When that lawyer filed his... I've never heard the expression, your motion. We're going to start using it, I guess. But when the lawyer filed this motion and said, this petition has no merit, you're not criticizing the representation when that lawyer filed that petition, or that statement, correct? Correct in this first issue. I am criticizing it for the second issue, because about the merits, the State is basing it entirely on appointed counsel's Greer motion. But to clarify, we're not arguing that appointed counsel was unreasonable in this case, because imagine if Mr. Azura had come up on appeal and argued strictly that the case should be remanded because appointed counsel was unreasonable. This would essentially... This is what the State is claiming. But if Azura had done that, the State would cry foul. I mean, this attorney had not represented Mr. Azura in years. Mr. Azura effectively asked that he be released from the case, and a new counsel came in. The State would be crying invited error and forfeiture, because this was not Mr. Azura's attorney. It would be absurd for him to come up on appeal and argue strictly that the appointed counsel was unreasonable. So again, counsel, I'm sure you've heard what I've had to say. This case had been going on for twelve and a half years. Two separate lawyers have represented your client. Both of them have stated to the court that there is no merit to the claim. Ultimately, the court did look at the merits, and the trial court also found there was no merit to the claim. The appellate court now reverses and sends it back for the appointment of a third lawyer. How does the court do that? A couple things to that, Chief Justice Tice. I do want to make a correction that the retained attorney did not argue that this retained counsel proceeded on the petition. Granted, he adopted a pro se petition in total, and part of our argument, of course, is that retained counsel should have recognized some claims here and fashioned it in the proper legal sense. But I... Yes, appointed counsel did. Correct. And I do want to point out that this has been a lengthy case, but a lot of this delay is by no fault of my clients. I do want to note that about four years into these proceedings, appointed counsel said on the record that he had not yet read the trial transcripts. So there's a considerable amount of delay in this case. I agree. But it's not Mr. Azua's fault that his attorney performed unreasonably. Again, this court has never held that an attorney representing a post-conviction petitioner does not need to perform at least reasonably. And as the state has conceded again today to this court, the state has never contested that Azua's counsel performed reasonably. May I just... One final thing. I guess I don't understand what retained counsel filed. He filed a 651C certification, and then he also said he could not, would not, cannot amend the pro se filing. How do you interpret that? What does that mean? I would say in the most pessimistic light, it seems like the attorney was trying to split the difference by somehow not admitting on the record that he couldn't faithfully argue this. Yet, counsel filed nothing. Counsel went ahead and argued this. And in fact, I do want to make clear that on the record he admits it's not that he said he looked for this witness and couldn't find him. He admitted he didn't look for the witness. That was one of the bases. He looked and he found someone by that name, but then that's all we know. Yes. I think the language was he spent all of 30 seconds. And he identified the name, and we have no other information about what happened after that. Correct. Correct. He comes in and admits that, and more importantly, I think he actually admits that he's under the misapprehension that it's at a third stage evidentiary hearing that he would need to present an affidavit or present the witness himself. So that would be the second stage. My legal misapprehension was completely wrong at second stage. The second district's opinion here, finding that this counsel was unreasonable, is awfully thorough. And I want to note that the second issue... Counsel, if his representation was unreasonable, what made it unreasonable? The 30 second search for the witness? Yes, Justice Neville. In fact, there's a number of reasons why counsel was unreasonable. The second district needed to only find one of those, so the second district addressed this failure to investigate an actual innocence claim. But because of the state's waiver in this case, the briefing before this court is sort of awkward. You'll see that it's almost as if the roles are reversed. So on appeal, the state opted to simply ignore all of Mr. Zua's arguments in the appellate court as to why counsel was unreasonable, sticking solely to this idea that the case should have ended years ago because this was a dispositive motion. And then, after the appellate court issues its decision, finding counsel unreasonable, the state does not file a rehearing petition asking to institute this prejudice analysis, doesn't put it in a petition for leave to appeal, and then for the very first time before this court, asks for this prejudice analysis and does it by framing Mr. Zua's arguments for him. And then ostensibly knocking them down, but you can see in the response brief, we've had to point out to this court, and the state certainly knows this, that the argument as to why counsel was unreasonable is multifaceted. So, for example, we noted that there's a proportionate penalties claim sitting right there in the petition that Erzurum made, and counsel apparently missed that issue entirely. So was your client prejudiced? Absolutely. How so? He was prejudiced, Justice Holder-White, because counsel was unreasonable. These claims were never heard on the merits. So the prejudice in this case is exactly the sort of prejudice that Suarez and all these lines of cases hold, that if the record is not even developed by counsel in the first place, if counsel is unreasonable, then the merits can't be reached. So he was unreasonable for not amending the petition? Absolutely, yes. That was one of the arguments we made in the appellate court that the state refused to respond to. But what do we consider when we're looking at the issue of prejudice? Well, first, I'd ask this court to not apply prejudice. If this court were to overrule decades of precedent holding that there's no prejudice analysis at second stage, for example, the actual innocence claim in this case was dismissed not on the merits, not on the rejection, but on the merits. And that's what the circuit court held, and that's what the appellate court held. For example, in terms of the proportion of penalties claims, my client is serving a de facto life sentence for a non-homicide offense. Apparently, post-conviction counsel was completely unaware of this court's jurisprudence on this issue. It's a hot-button issue. The record's not developed at all. That issue was completely missed by post-conviction counsel. So the prejudice here is not only was that claim dismissed by the circuit court on non-constitutional grounds, because it wasn't even recognized by counsel, but this court is left with an entirely blank record. It's a total vacuum on whether there is a proportion of penalties claim here, because that's the sort of claim that requires collateral evidence. So the prejudice here is manifest, but ultimately this court should... So are you saying that we don't have enough information to analyze whether or not there was prejudice, or are you saying that you can demonstrate prejudice and that there's a reasonable probability that the outcome would have been different had these things taken place? I'd argue both, but I will admit that in our briefing we're arguing that the lack of investigation, the lack of recognizing these issues, that is the prejudice under Suarez and that line of cases. Because as we stand here today, that is this court's jurisprudence. The state is asking this court to overrule Suarez, although in its briefing, and I think in the oral argument in Addison in November, the state claimed that it's not asking to overrule Suarez. Justice Michael Burke last term pointed out a logical absurdity to that argument, that if that were the case, then this court would be treating two identically situated petitioners differently. That is, in Suarez, there's no confidence that there can be a prejudice analysis because counsel didn't file a certificate. In this case, in like cases, it's rebutted. We know that that certificate doesn't show that counsel performed reasonably. Similarly situated petitioners, but the Suarez petitioner would somehow get a remand and everybody else would have to prove the merits of their issue, even though counsel was undisputedly unreasonable. And the state is also asking this court to sort of graft a Strickland analysis onto these situations. But in the history of the Post-Conviction Hearing Act, this court has never done that, and for good reason, because the stakes are so different in these sort of cases. If counsel is ineffective at trial, there are, of course, societal costs to that. A conviction is overturned. The trial has to be redone. The stakes for both sides are very high. The stakes for the state in these sort of situations is considerably lower. The remedy here is second-stage proceedings. There's not a conviction overturned. There's not a new trial at this point. But the stakes for my client and, of course, every petitioner under the Post-Conviction Hearing Act are extremely high. By definition, every petitioner under the Post-Conviction Hearing Act is claiming that they're wrongfully incarcerated, that their conviction or sentence is unconstitutional. So the stakes for these petitioners are very high, and this court has always been clear that if a post-conviction attorney is convicted of a crime, and the attorney cannot perform, at least reasonably, then the case needs to be remanded. The last piece about remand, what is your response to my concern about a second appointed counsel? I think this court should not be concerned about that, because this court is always held. If counsel is unreasonable, it requires a remand so that the circuit court, so that the appellate court, so that this court has a record on which to adjudicate these claims. And because here, because the state does not even dispute that this counsel was unreasonable, the record is bare. This is not a court of first review. This court should not have to wade into the skin complexions of these witnesses, especially where the state has never argued this. The state purposely waived these arguments in the appellate court. Not merely a forfeiture, but an intentional decision to ignore Mr. Urzua's arguments and then not put this issue in a petition for leave to appeal. Aren't we in a kind of different position in that there was appointed counsel? Your client obviously has a right to counsel and received that. And that lawyer filed a motion saying there is no merit to the claim. Now you're asking another appointed counsel to come in to start, and what would that appointed counsel do? Start at the beginning of the investigation or respond to the motion, the Greer motion? I'm just concerned about the statute allows for non-appointed counsel. If this court would remand, new counsel should investigate the claims and fashion them into proper legal format. So again, the universe in a post-conviction claim is not unlimited. I don't think this court needs to be concerned about a waste of judicial resources where my client's liberty is on the line and counsel was undisputably unreasonable. Essentially it should go back down, the claims are already in the pro se petition. Like any attorney, they should research them, fashion them into proper legal format. And Chief Justice Tice, if the attorney ultimately concludes that ethically they cannot provide argument, then they need to put that in writing. They need to formally withdraw. You cannot split the difference. This is, of course, the key here. What should the trial court do? When the third lawyer comes in and files the same motion the other two did, what should the trial court do? The third lawyer should not file the same motion. It did not file a motion saying I cannot ethically amend the petition. But let's just assume the third lawyer comes in and says, I now have come in, I've been appointed, I've investigated, there are no meritorious claims. What should the trial court do? If that happens, then the attorney needs to put that in writing so that my client's on notice, unlike what happened the first time when counsel withdrew and my client was under the impression he was being allowed to hire a lawyer. What would need to happen if counsel simply cannot argue this case, they need to file a Greer motion so that my client can respond, so that the court can make a ruling on the merits, and so that the courts of review can properly decide this case. But that simply didn't happen here. The retained counsel performed unreasonably, also didn't file a Greer motion, so what happened here is the merits of these issues were never reached, and that was because of counsel's deficiencies. If there are no further questions, the second district opinion is thorough, and it's well-reasoned, and it's unanimous, and it's for that reason this court should affirm. Thank you. Your Honor, excuse me, I'd like to make just a few brief points. First of all, defendants appointed counsel absolutely did put his conclusions into writing in the Greer motion. Counsel explained why he had determined, in his view, that the claims lacked merit, and in fact were frivolous or patently without merit. So the defendant was on notice that his lawyer had made that assessment and was seeking to withdraw on that basis. How so, counsel? Well, on the record, the appointed counsel states to the trial court that he had explained the import of his motion to the defendant. This is at the February 2017 hearing, and the trial court then verifies that with Mr. Ozuah. And Mr. Ozuah says he does understand, and then at that point the trial court asks him. He does understand what? What the defendant says. Well, I think the record supports a finding here that the defendant did understand that his lawyer had determined that his claims lacked merit and that he was seeking to withdraw on that basis. I mean, I think counsel states on the record that he had explained that to Mr. Ozuah, and then the court clarifies that with Mr. Ozuah by asking him if he understands that. The court also said repeatedly that it was granting this motion based upon Greer and pursuant to Greer, and I don't think we can so easily brush that aside as just the trial court not understanding what those words mean. I mean, that, as I say, goes against the general presumption that we apply in cases, which is that, you know, trial courts know and understand the law. I think this trial court judge had probably seen a number of these motions before. I mean, it's not unusual. Counsel, at what point did the State file a motion to dismiss? We filed the motion to dismiss shortly thereafter. So the court noted when it granted the Greer motion that there was no motion to dismiss on file, and that's part of the basis for why she then allowed the defendant to hire a post-conviction counsel or a retained counsel. But we, I think about a month or so later, when we moved to reconsider the order allowing him to hire a new lawyer, we also filed a motion to dismiss at that time. But there was no motion to dismiss on file at the time that the court granted the Greer motion. Correct. And that's why I think it's important to understand that this is what the trial court was referring to when it says the granting of the Greer motion is not dispositive. And what that means is that under the appellate court precedent, and we cited this in our brief, the appellate courts hold that when a court grants a Greer motion, it can't simultaneously dismiss the petition. And we've argued in People v. Pingleton and here that that precedent is wrong, and that the court should explain that because a Greer motion is merits-based, there's really nothing for the court, nothing left for the court to do once it does grant the motion. But the fact is, at the time the circuit court here was dealing with this motion, the law in the appellate court was clear that it couldn't dismiss the petition at that point, and that the granting of the Greer motion was not dispositive. And so I think that goes towards explaining what the court meant by those statements. Counsel? Yes. Of course, hindsight is 20-20. But do you think the trial court should have done anything differently with respect to the request for time to hire counsel in the absence of a pending motion to dismiss? No, Your Honor. I think we'll – let me step back a second. As I've noted, we think that that appellate precedent is wrong. And so I do think that ideally the granting of the Greer motion should have allowed the court to then dismiss the petition. As Justice Schmitt explained many times in his dissents in those appellate court cases, once a court grants a Greer motion based on a finding that the defendant's claims are frivolous or patently without merit, there's nothing left for the court to do. But that's not the law in the appellate court at this time. So at the time the circuit court was dealing with it, I think the court was correct to say that the granting of the Greer motion was not dispositive. There needed to be further proceedings, namely a motion to dismiss filed by the State and a response by the defendant. And so if the defendant – and at that point, the defendant could either respond to the motion to dismiss pro se, or if he could afford to hire private counsel, there's really no reason why the court shouldn't be allowed to let him do that in its discretion. But that doesn't imbue him with the statutory right to reasonable assistance in the same way that he had from that initial appointed postconviction counsel. As Greer explained, the granting of that motion to withdraw essentially ends any right to continuing representation under the Act. Counsel, isn't that a bit unfair? We have a defendant who filed a postconviction petition. He takes the position that my constitutional rights were violated. He has an attorney, or an attorney is appointed. And the attorney, I'm looking at his motion to withdraw. It says nothing about an investigation that took place. It says he read everything. But it doesn't say that he investigated the allocations in the petition. So counsel then takes the position, after a number of years, well, this doesn't have any merit. Why is it that the defendant should not be permitted to go forward and argue his petition himself? As long as he has an attorney, he can't argue before the judge, correct? Correct, Your Honor. So once the attorney says it has no merit and the court has not reached the merits, what's wrong with him retaining his own attorney or being permitted to argue why his petition has merit? Well, he had the opportunity to argue that in response to the motion to withdraw. But it's not the motion to withdraw that he's concerned about. He wants his attorney to leave. He doesn't think his petition has merit. Let him go. I understand what the defendant's doing. He disagrees with me. He's not helping me. But he needs to focus on his own petition. And you're saying he can't do that, correct? You're saying once the Greer motion is filed and the judge, without addressing the merits, says, well, counsel says it has no merit, I'm accepting that. Fine, you can withdraw. And the petition's over? That's your proposal? Well, I would dispute that the circuit court here was basically saying I'm granting this motion solely because counsel determined that these claims were meritless. The circuit court didn't say that. What it said was I'm granting the motion to withdraw based upon Greer. But the court did not say it made any findings. Well, it didn't. But even at the first stage, when a circuit court summarily dismisses a petition, it doesn't have to express its findings. And that's a very good point. This was at the second stage, correct? Correct. But I think we're still talking essentially about a finding of frivolousness. And I think the granting of the Greer motion implies that the circuit court made that finding. Otherwise, it would have been improper to grant the Greer motion. Is anything wrong with the defendant being given an opportunity to either argue the petition himself or retain his own counsel to do so? Well, I don't think there would have been anything wrong with the defendant arguing the petition himself, and he had that opportunity in response to the Greer motion. So counsel files a motion saying, Your Honor, I have to move to withdraw because I've determined that these claims are frivolous or patently without merit. And the court asked the defendant if he had any response to that. And so he had ample opportunity to argue, Your Honor, I disagree. My claims are not frivolous or patently without merit, and you should not allow my attorney to withdraw. Let me clear up something for you. You're saying even if it's not an appointment by the court, the defendant no longer has a right to go out and get his own attorney. That's the State's position? In this case. Once the court granted the Greer motion, we don't dispute that the court here, you know, had the discretion to let him hire a retained lawyer for the further proceedings, but he no longer had that right to continuing representation under the Act, the right that gives him the, you know, the entitlement to the reasonable assistance. And so this is where I think this case is distinguishable from Smith and from Cotto and Johnson, where the court said that postconviction Petitioners have a right to reasonable assistance from retained counsel. Those were cases where the retained lawyer – well, Cotto and Johnson were cases where the retained lawyer was the defendant's only postconviction counsel. You didn't have a scenario where the Petitioner already had appointed counsel who had certified compliance with Rule 651C and been given leave to withdraw. Just so I'm clear. You're saying he had the right to retain his own counsel, but he didn't have the right to reasonable assistance. The – well, to be clear, I think the circuit court here had discretion to let him hire private counsel at that point because further proceedings were required. But at that point, he had already gotten the assistance that he was entitled to under the Act, which was the duties of Rule 651C as certified by the original appointed attorney. Thank you, Your Honor. I see that my time is up. I would again ask the Court to reverse the appellate court's judgment. Thank you very much, counsel. This case is adjourned under advisement as in Agenda No. 2. We thank you for your –